UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NINA ZANDERS,
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-137
Beckwith, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 18).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in July 2009, alleging disability since January 9, 2009 due to back problems/severe pain, severe acid reflux, thyroid problems, depression and anxiety. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) John S. Pope. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 6, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

    A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.   The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 19, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: osteoarthritis, degenerative disc disease, coronary artery disease, depression, post-traumatic stress disorder (PTSD), borderline intellectual functioning, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she may only frequently stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and she is limited to simple, repetitive tasks that do not involve meeting strict production or time standards and only occasional social interaction.
>
> 6. The [plaintiff] is capable of performing past relevant work as a <u>Cleaner</u> and <u>Presser</u>. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 19, 2009, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. 13-23).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required

even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that the ALJ erred in determining plaintiff's residual functional capacity. Specifically, plaintiff contends: (1) the ALJ erred by failing to properly weigh the opinions of her treating physicians, Dr. Waller and Dr. Houk; and (2) the ALJ erred in acting as his own medical expert. (Doc. 10).

#### 1. Weight to treating physicians

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

5

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[1]). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

---

[1] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

6

Plaintiff contends that the ALJ erred by failing to give controlling weight to the opinions of her treating physicians, Drs. Waller and Houk, in violation of the treating physician rule, 20 C.F.R. §§ 404.1567(c)(2), 419.627(c)(2) and Social Security Ruling 96-2p (1996). The ALJ gave "little weight" to both physicians' opinions, finding they were conclusory, not based on objective findings, and not consistent with the overall evidence in the record. (Tr. 19).

On July 31, 2009, Dr. Paul Waller, M.D., plaintiff's primary care physician, completed a basic medical form for the Department of Job and Family Services. (Tr. 609-10). Dr. Waller opined that plaintiff could lift and carry up to five pounds. (Tr. 610). He stated that plaintiff had limitations with standing and walking, but he did not offer specific limitations. Plaintiff was also found to be moderately limited in pushing, pulling and bending. *Id.* He concluded that plaintiff was unemployable for 9 to 11 months. *Id.*

Plaintiff contends Dr. Waller's opinion was entitled to controlling weight as the record shows his assessment "spanned a greater length of time and was based on firsthand knowledge of the Plaintiff, as well as other medical records from the practice group. . . ." (Doc. 10 at 5). Plaintiff also argues the ALJ erred by finding plaintiff had "no treating relationship" with Dr. Waller because the record shows he treated her since March 2009 and prior to that time other doctors in his practice treated plaintiff.

Plaintiff has not supported these arguments with any citations to the record evidence so as to enable the Court to determine whether the arguments have any merit. For this reason alone, plaintiff's contentions should be rejected. In any event, the ALJ did not find there was "no" treating relationship as plaintiff argues, but rather found no "significant treating relationship"

7

with plaintiff. (Tr. 19). Plaintiff has failed to cite to any treatment notes or other records indicating the ALJ's conclusion in this regard is inaccurate or unsupported.

In addition, although Dr. Waller was asked to explain what medical evidence, observations, and physical findings support his opinion, he declined to answer the question. (Tr. 609-10). In fact, most of the form filled out by Dr. Waller was left blank. *Id.* Because the opinion of a treating physician is entitled to controlling weight only where that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ did not err by declining to give the opinion more than "little weight" given the absence of any showing of the basis for Dr. Waller's opinion. *See Price v. Comm'r Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (upholding ALJ's finding where treating physician failed to provide any explanation for his responses, repeatedly declining the invitation to "please explain" the basis of his opinions).

On the other hand, the ALJ's assessment of Dr. Houk's opinions fails to comply with the rules for evaluating treating physician opinions. Dr. John Houk, plaintiff's treating internist, provided two functional capacity assessments showing plaintiff was limited to less than sedentary work. On May 19, 2011, Dr. Houk completed a Basic Medical Form for the Department of Job and Family Services. (Tr. 826-27). Dr. Houk reported that plaintiff's medical conditions include obesity, knee pain, low back pain, major depression, post-traumatic stress disorder (PTSD), and wrist pain. He noted a history of low back and knee pain since at least September 2010 and stated plaintiff suffers from major depression and severe social anxiety secondary to a home invasion in the past. (Tr. 826). According to Dr. Houk, plaintiff could stand/walk thirty minutes to one hour, sit for one to two hours, and lift/carry up to five pounds. He also opined

8

that plaintiff was extremely limited in bending, reaching, handling, and repetitive tool movements, and moderately limited in pushing/pulling. Dr. Houk also opined that plaintiff had a marked inability to walk and bend and is severely depressed and unable to function in a large group secondary to PTSD. (Tr. 827).

On June 28, 2011, Dr. Houk completed a second functional capacity assessment. Dr. Houk reported plaintiff's diagnoses as PTSD, low back pain, and knee pain. Plaintiff's symptoms included severe depression and anxiety, and pain in her low back and knees with activity. (Tr. 870). Dr. Houk's clinical findings included: severe depression; spine x-rays showing moderate degenerative disc disease; and knee x-rays showing moderate osteoarthritis. *Id.* Dr. Houk also stated that plaintiff was incapable of even low stress jobs due to severe depression and anxiety. (Tr. 871). Dr. Houk opined that plaintiff could lift up to 10 pounds; sit, stand and walk for about 2 hours each in an eight-hour workday; and frequently look up and down, turn her head right or left, and hold her head in a static position. (Tr. 872-73). He also noted that plaintiff could rarely twist, stoop, crouch, and climb stairs, and never climb ladders. (Tr. 873). Dr. Houk explained that plaintiff needed to take frequent unscheduled breaks and walk around for five-minute periods every thirty minutes. (Tr. 872).

The ALJ gave Dr. Houk's opinions "little weight" for the reasons "they are conclusory and are not consistent with the overall evidence in the record." (Tr. 19). This is the only statement made by the ALJ in assessing Dr. Houk's opinions and the ALJ never explained the basis for his reasons. As a result, the Court is unable to discern from the ALJ's decision the factual or legal basis for his decision to give Dr. Houk's assessments only little weight.

9

First, the ALJ did not consider whether Dr. Houk's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" for purposes of the "controlling" weight analysis articulated in *Gayheart,* 710 F.3d at 376. As plaintiff points out, Dr. Houk's report identifies the objective evidence in support of his assessed standing and walking limitations: x-rays of plaintiff's knee and back. September 2010 x-ray evidence of plaintiff's left knee revealed moderate osteoarthrosis, most pronounced within the medial compartment (Tr. 652) and May 2011 x-ray evidence of the lumbar spine revealed degenerative changes in the lower lumbar spine, extensive facet arthropathy between L5 and the transitional segment, and grade 1 anterolisthesis of L5. (Tr. 617). The October 2009 MRI evidence showed multi-level degenerative disc disease and facet arthropathy, with no definite neural compression demonstrated, and mild central stenosis at L4-L5 and a questionable asymmetric prominence of the exiting right L5 nerve root proximally, which was incompletely included on axial imagining. (Tr. 504-05). The differential diagnosis included developmental asymmetry of the dorsal root ganglion, and a small mass or a small disc extrusion that was inseparable from the nerve root. (Tr. 505-06). The University Hospital progress notes indicate plaintiff received long-standing treatment for her knee and back impairments and obesity. (Tr. 612-801). In rejecting Dr. Houk's opinion that plaintiff would be unable to perform the amount of walking and standing required for light work[1] activity, the ALJ failed to explain whether the treating physician's opinions were well-supported in light of the x-rays, MRI, and progress notes cited above, especially when factoring in plaintiff's morbid obesity.

---

[1] The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Social Security Ruling 83-10.

The Commissioner concedes that Dr. Houk listed reasons why he thought plaintiff was disabled, but argues he did not provide any "clinical" findings to support his limitations. (Doc. 15 at 11). Yet, there is no indication that the ALJ relied on a lack of "clinical" findings as a basis for his decision to provide only little weight to Dr. Houk's opinions. The Court cannot accept the Commissioner's post-hoc rationalization in support of the ALJ's decision. Where the ALJ has failed to weigh a treating physician's opinion in accordance with Social Security's procedural regulations, the Court cannot excuse the failure even though there may be sufficient evidence in the record supporting the ALJ's decision. *See Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. . . .") (internal citations omitted). More importantly, Dr. Houk provided specific "objective" findings, *i.e.*, x-ray evidence of plaintiff's knee and back impairments, which the ALJ failed to address in weighing the supportability of the treating physician's opinion. When a treating physician cites to specific objective findings in support of his opinion, it is incumbent upon the ALJ to explain, with citations to the record, why he believes those objective findings are "conclusory" or do not support the treating physician's opinion to enable this Court to engage in meaningful review of the decision. *Wilson*, 378 F.3d at 544.

The Commissioner also argues that Dr. Houk based his opinion in part on plaintiff's back and knee pain, and the record suggests plaintiff's impairments are not as severe as Dr. Houk thought they were, citing to plaintiff's discharge from physical therapy on three occasions. (Doc. 15 at 11). Although it is true that plaintiff was dismissed from physical therapy for noncompliance, which is a factor the ALJ properly considered in assessing plaintiff's credibility,

11

there is no indication the ALJ considered the reasons for her noncompliance. (Tr. 820- discharged due to "attendance"; "she was making slow progress – P.T. believes her transportation was very haphazard. . . ." ; Tr. 821- "she can't get up to Drake/Main campus secondary to transporation"; Tr. 638 - phone turned off and couldn't call to cancel physical therapy; Dr. Houk reported plaintiff wants to return to physical therapy and he "will call and advocate for patient"). *See* SSR 96–7p, 1996 WL 374186, *7 (an "individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed *and there are no good reasons* for this failure.") (emphasis added). In addition, it is not clear why any alleged noncompliance with physical therapy justifies the discounting of the treating physician's opinion, which is based on objective x-ray and MRI findings indicating an underlying basis for plaintiff's pain. The ALJ's failure to articulate his reasons leaves this court without a basis for determining whether the ALJ's assessment is supported.

The Commissioner further argues that the "objective" findings set forth in Dr. Bailey's March 2010 consultative examination showed no significant abnormalities and support the ALJ's decision. The Commissioner's argument ignores the "objective" x-ray evidence from 2011 upon which Dr. Houk relies and which post-dates Dr. Bailey's examination. Dr. Houk relates plaintiff's history of low back and knee pain to "at least September 2010" (Tr. 826), which again post-dates Dr. Bailey's examination, and along with the 2011 x-ray findings strongly suggests that plaintiff's condition deteriorated after the consultative examination. Even if the ALJ cited to Dr. Bailey's findings as a reason to discount the treating physician's opinions – which he did

12

not – Dr. Bailey's report alone does not stand as substantial evidence supporting the ALJ's decision. *See Walters,* 127 F.3d at 530-31.

Second, the ALJ did not consider any of the other regulatory factors that must be balanced in determining the weight to afford Dr. Houk's opinions when he declined to give the treating physician's opinion controlling weight, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, the specialization of the treating source, and other factors such as the extent to which an acceptable medical source is familiar with other information in the record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *See also Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. Here, the ALJ did not discuss or even mention these factors in weighing Dr. Houk's opinions. In the absence of any explanation by the ALJ for his decision to give Dr. Houk's opinions little weight the Court is unable to meaningfully review the ALJ's decision or conclude that the ALJ gave "good reasons" for the weight assigned to Dr. Houk's opinions.[2]

In this case, the ALJ failed to satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion. The Sixth Circuit requires that "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson,* 378 F.3d at 544

---

[2] Although the same could arguably be said for Dr. Waller, there is no error because Dr. Waller's opinion is so patently deficient that the Commissioner could not possibly credit it. *Cole,* 661 F.3d at 940 (citing *Friend v. Comm'r of Soc. Sec.,* 75 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson,* 378 F.3d at 547)).

13

(citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)). The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.* Without any explanation as to why the ALJ believed Dr. Houk's opinions are "conclusory" and "inconsistent" with the other record evidence, the Court is unable to say the ALJ's decision to discount those opinions is supported by substantial evidence.

Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. The Court cannot say the ALJ's failure to give "good reasons" for the "little weight" he gave to Dr. Houk's opinions is harmless error. Dr. Houk's opinions cannot be considered so patently deficient that the Commissioner could not possibly credit them in light of the objective x-ray and MRI evidence discussed above. *Cole*, 661 F.3d at 940. Notably, if plaintiff is unable to perform the walking and standing required for light work and is limited to sedentary work, Grid Rules 201.09 and 201.10 of the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. would direct a finding of disability. Plaintiff's first assignment of error should be sustained.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinions of plaintiff's treating physicians and an explanation on the

record therefor; reconsideration of plaintiff's RFC; and vocational considerations consistent with this decision.³

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/23/14

Karen L. Litkovitz
United States Magistrate Judge

---

³The Court need not address plaintiff's second assignment of error – that the ALJ acted as his own medical expert – because even if this assignment of error had merit the result would be the same, *i.e.*, a remand for further proceedings and not outright reversal for benefits.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NINA ZANDERS,
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-137
Beckwith, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).